December 20, 1975. Team Worldwide Corporation v. Intex Recreation Corporation. Mr. Harkins please proceed. May it please the court, Robert Harkins of REACT Charion for Appellant Team Worldwide Corporation. Your Honors, there are two major points that we'd like to discuss in this argument today. First, that the Patent Trial Appeal Board erred in finding the claim term pressure controlling assembly to be means plus function. And second, were it means plus function, there is supporting and corresponding structure in the 979 patent and the 847 patent to which it claims priority. This case is a bit unusual in that the 847 application predates the AIA March 16, 2013 date. It was filed in May of 2011. So if there is support for the application and the 847 application, then there is no jurisdiction for a post-grant review process at all. And as the board held at Appendix 71, the 847 application is quote, essentially the same in all relevant respects to the specification of the 979 patent. So if either the claim is found to not be means plus function or is found to have corresponding structure, then the written decision from the board should be vacated and then no remand is warranted because in that situation there is no jurisdiction for post-grant review. Is it correct that the only difference was adding the numbers 121, 122? That is correct. And as the board found, adding the numbers didn't change the disclosure at all. That was the finding of the board that we don't dispute. That's correct. Okay. Thank you. This is Jeff Toronto. I just want to double check. I think what you just said, and I read your blue brief the same way, your argument about the unavailability of the PGR process here rests entirely on your argument about either the inapplicability or the satisfaction of 112F. You don't make a separate argument that I've seen that the PGR regime was unavailable here. Well, so thank you, Judge Toronto. I think if you look, I think that that is the focus of the argument here. But I think in line with that near the end of the brief, what we're saying is there really is no difference here. And it is an unusual circumstance under which the board decided to undertake this query in the first place. Since they're finding there's no difference between the 847 and 979 applications, then really what they're saying is we're using the statute to say we need to find support to get the earlier priority date. But this all collapses into the same disclosure that was made in 2011 in the 847 application. It would be reasonable for this court to hold under that circumstance that since the query in the first instance is, what does the 847 application say or not say, and that predates the AIA, this court would certainly be, I think, find it appropriate to find under that circumstance that the board shouldn't have moved past that point. It should find that, well, we found that there's no additional matter in the later application, so there's no jurisdiction here. We don't need to get into the support question or not support question beyond that because this really is all about the disclosure that was in the 847 application. I hope that answers your question. Thank you. Here's another preliminary question. Is there a pending reissue application off of this patent? Your Honor, I am not aware of that. Okay. So we start, I'm going to start to argue just the part about this not being means plus function. We start with the presumption in the en banc way. Mr. Harkins, just to let you know, on Page 1 of the red brief, it talks about how there's a pending reissue application 16-894-242. Okay. So that's why I was asking. Your Honor, that was not something I was focused on for the purpose. If Your Honor has a question about it, I'd be glad to try to answer it. We don't understand that that has any impact on the analysis that was raised in our brief. Okay. Either way, the language is either supported or not supported to have pressure-controlling assembly. And the presumption is it doesn't use means for, and under Williamson, that means that there's a presumption that it's not means plus function, and that INTEX was required to overcome a presumption that it is not means plus function. The words means for, and particularly in light of the prosecution history in this case, opposed it would understand that means for in this case was actually discussed in the prosecution history and was applied and that the rules were actually set forth by the patent examiner in this case, how one would read the patent claim language that we're talking about as a whole. It was recited in the prosecution history that if means for was being employed, the patent examiner looked at that and thought it was means plus function. If language was not being used, means for, the patent examiner in that case determined that the presumption was that it's not means plus function. That was actually set forth, that discussion. It was done in the context of a different claim term, but it showed that what was happening if you're opposed to reading through the specification in the prosecution history is that you were to understand that the patent examiner looked at this and in the context of the noise silencing means, and determined that if the patentee wanted to make it means plus function, they should use the means for language. Is there case law for that proposition that where the examiner is silent as to commenting on the question of whether he or she believed the claim term in question was a means plus function term, and therefore courts are bound by that, and should therefore assume that it is not a means plus function limitation and it cannot be a means plus function limitation? No, Your Honor. We're not going so far as to say that a court is bound by what the examiner did, but the query in a case about whether the presumption is overcome is what would oppose a person of ordinary skill in the art understand was being intended by the claim language that was used. Would they think that it's means plus function or not means plus function? Is means plus function law a subjective inquiry or an objective inquiry? Means plus function law is a legal determination that the court makes, and so to that extent you would say it's an objective inquiry, but the query goes to what a person of ordinary skill in the art would understand the term to mean, and in that context you have to look at the intrinsic record to make that determination. So if a person of ordinary skill in the art is trying to determine, I see pressure-controlling assembly, I see the context of that, I'm trying to determine if this is-I understand what those words mean, I understand that I have seen that there are things called pressure-control assemblies. Can you identify something in the record for us, in the patent itself perhaps, that establishes why pressure-controlling assembly is not a nonce term, but it is in fact an established term of a defined class of structures in this art? Well, the query-I mean, often a patent won't go into this is a defined term and structure, it just uses the term, but what I will say is, if you look at the summary of the invention of the 979 patent, it says the primary objective for the present invention is to provide a, quote, controlling mechanism, and then it says what the controlling mechanism includes. It includes a valve-controlling assembly, it includes a pressure-controlling assembly, it includes a linkage assembly. Like those are parts that are being presented as the components of this more generalized controlling mechanism. But then it says, you know, what really is going on here is that you're referring to the pressure-controller assembly as performing a variety of functions-monitoring air pressure, activating some other device to provide more air, checking on the threshold. I mean, what we're trying to figure out here is whether pressure-controlling assembly actually means something to one of skill in the art, or is it something of a black box term that's being utilized in this patent to just refer to some magic box that's going to perform a lot of preferred functions. So there's a lot of evidence in the record that pressure-control or pressure-controlling assembly are terms that are used by people in the practice, and that it is known. There was a definition that was provided by Dr. Stevick at Appendix 2859 and then discussed at 2884-87 from the Dictionary of Science and Technical Terms for pressure control, which is in line with exactly how it's used here. Mr. Kuchel, the expert for the other side, had specifically said, and I'll quote from Appendix 2765, I think I already said I believe pressure-control assembly does connote that it controls pressure and it's an assembly and it was known in the field. That's their expert saying that this concept of pressure-control assembly, this item, this object, was known in the field, and this was something that he said after he was presented with the fact that in Exhibit 2004 at Appendix 2700 and 2843, you can go on Google, you can look up a pressure-control assembly, you can buy those on the Internet. Those exist. They're known and they look just like the types of things that you find in the patent. Can I ask you, I guess, kind of a two-part question about the fact that the middle word of this three-word phrase is a gerund, an I-N-G word, and the two questions are, did you present extrinsic evidence examples of that phrase, namely the I-N-G form of the phrase, in this particular case to establish your assertion that the phrase is used in the art to describe a structurally defined device? And then the related version of that is a question about precedent. Have you cited to us any precedent in which a phrase, and let's assume that the word assembly for purposes of this question is a nonce word, like device or something, any precedent that, like this one, has an I-N-G word as part of it that seems on its face to be labeling a function that needs to be performed with an I-N-G term? I hope that's clear. We have not found a case one way or the other about that. We haven't found any case where somebody said the fact that something used a gerund caused it or didn't cause it to be functional as opposed to what it is. So, for example, in the zero-click case in Sky versus MindGeek, there are citations to things like, they say if you have something like filter, break, or clamp, they don't say clamping, but if you had something in a patent that was a clamping assembly, that doesn't mean that you wouldn't know as a person who already has a skill what a clamping assembly is. It's parts that are clamped. What about the first part of my question? Did your extrinsic evidence of examples out in the world to demonstrate skilled artisans' understanding, did any of those actually involve an I-N-G phrase? Well, in the intrinsic record, we showed that there was testimony about prior art using pressure-controlling assembly, and it had been used in a prior patent, and that was actually latched upon by the examiner in a rejection. Your own prior patent? The 963 patent, yeah, the prior patent from Mr. Wang. But that's the only instance. I'm trying to think of the instance in which the actual I-N-G word was used. We didn't find testimony. Dr. Stevig testified that the query here is whether one of skilled art would look at this and understand reasonably what the structure is. He said pressure-control assembly is out there. You're not going to find this to be any different. If you're one of skilled art and you see this, you see what it's doing, you know it's a pressure-control assembly. Mr. Kuchel didn't say that would cause you not to know what it is. When asked about the examples like the 1953 regulator that Dr. Stevig mentioned, he understood that to be a pressure-control assembly and that the purpose of that was to control the pressure, and it looks remarkably similar to what is shown in the patent application. Okay, thank you. That answers my question. Mr. Harkins, one last question. The China application, the priority document here, has a lot more content about the pressure-control mechanism, which I assume is basically the same thing as the pressure-controlling assembly here claimed, but all of that content and description doesn't exist in this specification, this version of the specification. I was wondering, do you know why the inventors here deleted that content from the written description in this patent as well as the predecessor 847 application? Thank you, Your Honor, for the question. Yes, I do think what you're saying is the pressure-control mechanism is a translation from Chinese, and I think another translation is May I just finish this answer, Your Honors? Yes, of course. Okay, thank you. That's a translation, and I think another translation of the same phrase would be pressure-controlling assembly. I think those are just two versions of this and actually speak to the fact that... My question is, why was the content deleted from the application that resulted in this patent? So the inventors didn't, you know, this is a patent attorney decision, and we believe that... Why did they do that? Because, I mean, our belief is that the reason behind this was the feeling that it was unnecessary because people know what a pressure-control assembly is. Okay. They didn't feel the need to recite the aspects of a pressure-controlling assembly when that's a phrase that people know, and you can go look up what a pressure-control assembly is and find that it does those functions. And with that, I'll thank you, Your Honors. Okay. Any more at the moment? We saved Mr. Harkin's rebuttal time. No more. Okay. Thank you. All right. Mr. Sears. Thank you, Your Honors, and may it please the Court. Your Honors, I'd like to just pick up where we started with my colleague's argument on the written description question, and I just want to make two notes. One is that there are some other differences between the 847 application and the 979 application. For example, the 979 does not have certain of the numerals in Figure 2A, which is the subject of a lot of discussion here, including numerals 4, 8, 10 to 12, and 18. But, you know, for the written description issue, we are looking at the 847 application. And on that issue, the Board actually did two things. It performed two inquiries. One, after performing the means plus function inquiry and finding that the term was indefinite for lack of corresponding structure, the Board said, based on that, that necessarily means that the inventor did not have possession of the invention at the time of the 847 application because it's an unbound functional limitation. So based on the MPEP and just reasoning it out, that shows that there was no written description support in the 847. And then the Board performed a second inquiry and said, separately, if you look at it just alone, whether there's written description support in the 847 or not, there isn't. And it went through the entire analysis, including their extrinsic evidence and expert testimony, and found that there was no written description support in the 847. Now, it found that focusing on one of the four functions that the pressure controlling assembly is recited to perform, it didn't feel the need to reach the other three functions. It also didn't feel the need to reach an alternative argument that we presented, which was based on some amendments in the 847 prosecution, that that also made it a first inventor to file application and therefore subject to post-grant review. So even if your honors disagree with the Board's reasoning on the means plus function and the written description findings, there would still be a necessity for remand on those issues. I want to also touch upon your honors asked about whether there is case law regarding, you know, if something is silent in the prosecution history as to whether a term is means plus function or not, whether that indicates that it is not means plus function. And, in fact, there is no case law that says that. There is case law that says what the examiner does in prosecution history is not determinative. In the Skye case, the examiner actually explicitly found that the term was means plus function, and this court on appeal said we are not bound by that. We look at the term. It's being disclosed purely structurally, so we're not bound by what the examiner did. In addition, in the MTD case, the patent owner actually, during prosecution, argued that the term connoted structure. It was entitled a patentable weight because it connoted structure. And then before the Board, it said, no, this is a means plus function term. And so this court said the fact – and the Board actually gave that a lot of weight. The Board said I'm going to give a lot of weight to what you said during prosecution that this was structural. And this court said it was error for the Board to do so because there was no – it was never in the context of 112.6. And barring any unequivocal statement to that effect, it was error to give that dispositive weight. So, if anything, the case law suggests that given the complete silence on whether it's means plus function or not for this term, that does not carry a lot of weight here. Your Honors also touched on the specification and whether there's a disclosure in the specification that's structural. And my colleague mentioned three things, the valve controlling assembly, the pressure controlling assembly, and the linkage assembly. But as the Board found, there is no disclosure of any connection with any of those things and the supplemental pump, which implicates the functions that the pressure controlling assembly is reciting to do, including automatically activating the supplemental pump and then controlling the supplemental pump to keep pressure within a predetermined range. The Board looked at this, looked at the 847, looked at the 979, and found there is absolutely no disclosure here of any connection between the pressure controlling assembly or either of those other two assemblies with the supplemental pump. And that was one of the reasons they did not credit their expert's testimony, because it just did not find support in the record. Your Honors also asked about the extrinsic evidence. My colleague mentioned the dictionary. Again, what the Board found, and as we pointed out in our brief, the definition actually is defined, number one, it's for pressure control. It's not pressure controlling assembly. But even then it's defined as any device or system able to maintain, raise, or lower pressure in a vessel or processing system. So as the Board correctly found, and there's substantial evidence to support this finding, that is described in purely functional terms. So it doesn't – Mr. Sarris, this is Joe Torrento. Can I ask you this question? Is there evidence in the record of a variety of different – of structurally different items that would perform the function of pressure control? Yes, thank you, Your Honor. They introduced – so they went and they looked, can we find things that say pressure controlling assembly? And they introduced five pieces of evidence, five examples of that. Out of all of years of searching, there were five examples. Two of those examples, and just let me preface it by saying, none of them actually use the term pressure controlling assembly, to your earlier question, Your Honors. They all use pressure control assembly. But even putting that aside, there's only five examples here, two of which came years after the priority date. These are Internet searches for a replacement part list and an import-export record in 2019. So it doesn't – it's not as of the priority date. But even then, those two examples, they don't say anything about what that part is, what functions it performs, or how it can have any relation to inflatable products or the functions that the pressure controlling assembly is recited to perform. One of the other examples is a patent publication. As the Board found, that is described literally as a box, and it's described functionally. It's something that any element, system, or assembly that can perform this function. That's how the publication describes that. Let me try to ask the question in a more focused way. If I had a claim that said a boat propulsion mechanism, I would think, well, that's obviously functional. And one immediate reason that would come to my mind is that I can imagine a lot of radically different structures that would do this. For example, a sail. Another would be an outboard motor engine. Another would be oars. Is there anything in this record that gives me a comparable picture of a variety of structures that would control pressure? Yes, thank you, Your Honor. The two remaining exhibits that I have go exactly to that question. There's two patents. One uses a field pressure control assembly in the field of well drilling. That's at Appendix 2706-13. The other goes to a rotative joint for a pneumatic pressure controlling assembly in the field of automotive vehicles, particularly trucks. That's at Appendix A2714-18. And what the Board found, the Board looked at those and said, well, if anything what this tells me is that depending on what your application is, the structure, to the extent there is structure disclosed, it's going to vary widely. There's no commonly understood meaning or sufficiently definite meaning as a name for structure for something that performs those functions. Aren't these terms in the claims always limited to what's described in the specification? I'm sorry, Judge Newman. Can you repeat that? I always understood that terms in claims were limited to what's described in the specification. You're saying that that's not correct? No. The term is, you know, in terms of corresponding structure, it can only be corresponding structure that's disclosed in the specification and clearly linked to the function. What I'm saying is for the first question about whether the term itself connotes structure, what the Board found was the only evidence we have here indicates that there is no that have no connection to inflatable products and suggests that the structure is going to be different depending on how you're performing, you know, some of these functions. You're saying you don't look to the specification to see what it means? Yes, Judge Newman. You do look to the specification to see whether it's imparting structure to the term. And when you look at the specification here, there's only four sentences, and each one is just describing pressure controlling assembly in terms of functions that it performs. So the specification is telling you that there isn't any structural definition here. It's not imparting any structure to the term. How about the drawings in the specification? The drawings in the specification, the only thing that is in the 979 that's linking it there is the 121 and 122, but it doesn't tell you anything about what 121 or 122 are. It doesn't give any sort of structural definition or cabining of what those could possibly be. And so that drawing alone can't impart structure to the term itself, pressure controlling assembly. Just to wrap up Your Honor's question about the evidence, you know, we explained in our response brief why all of this evidence supports that the term didn't have a generally understood meaning for structure. And if you look at the gray brief, there's no response to that. We don't understand that there's a dispute on that, that this didn't connote structure, and there's substantial evidence for the Board's finding there. I just wanted to touch on Mr. Kuchel, our expert's testimony, which my colleague raised, and he said that he cited Appendix 2765 and said that Mr. Kuchel's testimony was that the term connotes structure and it's known. But as the Board found, and if you look at the actual transcript, what he's saying is what was known was the multitudes of ways of sensing pressure. And the Board reviewed his declaration and his deposition testimony, including all of the portions that appellants cited below, and found that it gave it credibility, gave it weight, because it was consistent. It was consistent that there are many ways of doing this, and there's no commonly understood meaning of what structure that could be. And just to touch on the drawing again, Judge Newman, the other thing to mention is when you get to the corresponding structure question, even if you credited their expert's testimony, which the Board found was not creditable, he is pointing and TWW is pointing to other things in addition to the pressure-controlling assembly. In addition to 121 and 122, it's pointing to other things and saying those are corresponding structure. And, in fact, if you look at their gray brief at page 7, they come right out and say it. They say the pressure-controlling assembly plus some sort of electrical connection that is not shown there, but they say there must be an electrical connection. And that, in addition to the pressure-controlling assembly, is what performs the functions. Let me ask you a final question about the no matter priority issue. Is your understanding of the law that whenever an applicant makes a change, such as adding the markup numbers at the examiner's request, that the priority date is lost? Your Honor, what we're saying here is that the inquiry is looking at the 847 application. So if you're looking at the 847 application, it does not provide written description support for the claim as issued in the 979 patent. The only difference was the addition of the numbers 121 and 122. And this is my question. And the examiner required that that change be made. And your position, the Board's position, was that when the examiner makes such a requirement and the applicant complies with it, the applicant loses the priority date. Well, Your Honor, I think what actually happened here, it wasn't the fact that they added the numbers. We would say that even if... That's all the record shows. Well, the record at, and this is starting at Appendix 60, going to Appendix 65, what the Board actually did was number one said there was no, it was an indefinite term, so there's no written description support in the 847, you know, focused on the 847. And then it said even if you look at the 847 in isolation, it doesn't provide written description support for the claim. So it's not the fact that they added the numerals that indicates there's no written description support in the 847, Your Honors. It's the fact, we would say that the 979 patent also does not provide written description support to the claim because there's nothing there indicating  So, Your Honors, we would say it's, you know, you look at the 847 and that is not providing written description support to the 979. And I know I heard the buzzer, but I'm happy to answer any other questions if Your Honors have any. Any more questions for Mr. Sears? No. Okay, thank you. All right, Mr. Harkins, you have your rebuttal time. Are you muted? Are you there? Thank you, Your Honor. I was muted. I want to address the discussion about Intex's expert, Mr. Kuchel. He, yes, his overall position as Intex's expert was that pressure controlling assembly, oh, there's so many ways you can control pressure. It could be anything. It's very similar to saying that, oh, you know, the word clamp is in the patent, but there are so many ways you can clamp things together. You can use a face clamp or a bar clamp or a trigger clamp or who knows how many different ways you could squeeze or press things together. So that just doesn't mean anything. That's just a functional term. That conclusion that's drawn was belied by the actual testimony when actually confronted with things that talked about pressure control assemblies. He knew what they were, and he was able to discuss them. He was presented with the patent, Exhibit 2007, that just said pressure control assembly, pointed to a box, and he admitted that Opoza would understand what that was just from the fact that it was labeled that way. And at Appendix 2769, when asked about that, he said he could understand that, even without more. So would Opoza see this term and believe it had meaning and structure? Yes. When asked specifically, well, what is this, all the ways that you can do it, figure out how to sense the pressure, at Appendix 2747 and 48, he said there are basically two types. There's electric membranes or disks that provide a signal that can be converted to pressure, and that can be used to control the pressure, or there are manual analog type gauges that go back, and he said, probably go back forever to the 1800s, like even in the 1970s and 80s, there were products on the market that had manual analog gauges to sense pressure. These are the two categories of structure that are used to trigger the control. They sense and trigger the control. My colleague mentioned the fields in which you can have a pressure control assembly being diverse. But this is a pump. This is a mechanical device. These were mechanical devices. If you look at the pressure control assembly figure in the patent that is the well-drilling one that's at 2706 through 13 in the appendix, you'll see that it is remarkably similar to the picture that exists in this patent. It has a membrane and a rod, and there's pressure on either side of the membrane, and that causes the rod to move, which triggers control. And that's exactly what we're seeing in other regulator art, and it's what we see in the patent. And there aren't an unlimited number of ways. It's not amorphous. It's like the word clamped. That was presented, and that's in the record. I've cited several appendix pages that support that. So we really feel that this is not an instance in which there is no, So the concept of the test that was set forth in Williamson and followed up in ZeroClick and the NTD products case is, does this communicate some reasonable understanding to persons of skill in the art as to what is being discussed? And the evidence is there's a lot of evidence in the record that suggests exactly that from our expert and from their expert. Finally, I do want to address the board deciding not to credit Dr. Stiebich's testimony in that primarily what they said is they didn't think there was support, that it was conclusory, and that it matched tests that was in the response to the petition and that, therefore, they wouldn't credit it. However, that first there was support. He used the scientific dictionary definition. He went to the intrinsic record. He did an analysis of the pictures. He used the 1953 gas regulator as an example. These are all bits of support. It wasn't just conclusory. There was a full analysis done. And second, while the language matched, that doesn't mean that he didn't do the work or the analysis. The testimony that was submitted was submitted simultaneously with the brief. He had been hired to work with the attorneys on understanding this process and coming up with testimony. Yes, the brief quoted extensively from his and matched in a lot of ways his testimony that he gave, but that's not the same as him just adopting something, and there's no evidence of that in the record. There's no testimony that he didn't do his own analysis. There's no testimony that the citations and the quotes in his report are not his analysis, and yet the board presumes somehow that he somehow didn't do an analysis but just simply adopted the brief. That's not in the record, and the refusal to credit any of the testimony or weigh it on that basis is error. So beyond that, I would just say that if the court finds that there is support in the application for that pressure-controlling assembly, then I think we agree at that point that that means it's the 847 application as well, and that would mean that there shouldn't be a PGR. I heard my colleague talk about other challenges that were not briefed in this matter. They were not presented in this appeal as any sort of alternative basis to affirm or to maintain the appeal. So really all we have here is if there is support for this phrase, then we don't see anything else from the board that would indicate that there's another reason that they would have jurisdiction over this PGR. Okay. Would you make a final comment on the new matter question and the priority date? Right. Well, clearly this is something where there was no new matter added, and the 121-122 was a requirement to the examiner that was complied with but is not new matter. It's something that the examiner requested and that was done. We don't think that that causes a change in the application that would cause it to get the later date. And, in fact, aside from the 121-122 being added, the board itself didn't seem to think, and opposing counsel today, nobody seems to be taking the position that that actually added anything of relevance or substance to the application. Okay. Any more questions for counsel? No. Okay. Hearing none, the case is taken under submission with thanks to both counsel. Thank you, your honors. Thank you, your honors.